IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDWARD DAVID JONES,

        Petitioner,           No. CIV S-02-2276 LKK DAD P

    vs.

JOSEPH McGRATH, Warden,

        Respondent.        FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1999 conviction on charges of first degree murder, attempted robbery, and robbery.  He seeks relief on the grounds that: (1) his trial counsel rendered ineffective assistance of counsel; (2) the improper admission of evidence violated his right to a fair trial; (3) restrictions imposed by the trial court on the cross-examination of a prosecution witness violated his rights to confrontation and a fair trial; (4) jury instruction error violated his right to due process; and (5) the cumulative effect of errors at his trial violated his right to due process and a fair trial.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

/////

1

PROCEDURAL BACKGROUND

2          In an amended information filed in the San Joaquin County Superior Court on

3   April 29, 1998, petitioner was charged with first degree felony murder, in violation of California

4   Penal Code § 187 (count 1); attempted robbery, in violation of California Penal Code §§ 664 and

5   211 (count 2); and second degree robbery with use of a firearm, in violation of California Penal

6   Code §§ 211, 1203.06(a)(1), and 12022.5(a) (count 3).  (Clerk's Transcript on Appeal (CT) at

7   33-36.)  The amended information also alleged that petitioner had suffered a prior serious felony,

8   within the meaning of California Penal Code §§ 1170.12(b) and 667(d); and that he had served a

9   prior prison term, within the meaning of California Penal Code § 667.5(b).  (Id.)  Following a

10  jury trial, petitioner was convicted of all of the charges against him.  (Id. at 245-48.)  On April

11  12, 1999, the trial court sentenced petitioner to life imprisonment without the possibility of

12  parole plus fifteen years.  (Id. at 285-87.)

13          Petitioner filed a timely appeal, in which he claimed that the trial court erred when

14  it: (1) improperly admitted evidence that prosecution witness Grimaldo feared petitioner would

15  kill him for testifying against him; (2) improperly restricted the cross-examination of prosecution

16  witness Juan Luna; (3) instructed the jury pursuant to CALJIC No. 2.90; and (4) permitted the

17  prosecution to refer to itself as "The People."  (Answer, Exs, A, D.)  Petitioner also alleged that

18  the cumulative effect of the errors at his trial deprived him of a fair trial and that the trial court

19  committed sentencing error.  (Id.)  The California Court of Appeal for the Third Appellate

20  District found that the trial court had committed sentencing error but affirmed petitioner's

21  conviction in all other respects.[1]  (Answer, Ex. D.)  On January 23, 2001, petitioner filed a

22  petition for review in the California Supreme Court.  (Answer, Ex. E.)  That petition was

23  summarily denied by order dated March 14, 2001.  (Answer, Ex. F.)

24  _____

25          [1]  Specifically, the state appellate court concluded that the trial court had erroneously
    imposed a consecutive one year term on count 2 instead of an eight month term.  (Answer, Ex. D
26  at 17-18.)  The appellate court modified the judgment accordingly.  (Id. at 18.)

1    On February 22, 2002, petitioner filed a petition for writ of habeas corpus in the

2    San Joaquin County Superior Court.  (Answer, Ex. G.)  Therein, he alleged that his trial counsel

3    rendered ineffective assistance in failing to: (1) call a mental health expert, a firearms expert, and

4    an identification expert as witnesses for the defense; (2) investigate and present witnesses in

5    support of an alibi defense; and (3) file a motion to suppress evidence.  (Id.)  That petition was

6    denied in a reasoned decision dated March 27, 2002, as amended by order dated July 23, 2002.

7    (Answer, Exs. H, I.)  On April 9, 2002, petitioner raised the same claims in a petition for writ of

8    habeas corpus filed in the California Supreme Court.  (Answer, Ex. J.)  That petition was denied

9    by order filed September 25, 2002, with citation to In re Swain, 34 Cal. 2d 300, 304 (1949) and

10   In re Duvall 9 Cal. 4th 464, 474 (1995).  (Answer, Ex. K.)

11   Petitioner filed a petition for writ of habeas corpus in this court on October 17,

12   2002.  By order dated November 4, 2002, that petition was dismissed with leave to amend.

13   Petitioner filed an amended petition on January 21, 2003, on which this action is proceeding.

14   FACTUAL BACKGROUND[2]

15   On November 29, 1997, at about 8:15 p.m., Sarah Fowler and
     Carlos Pereira were working at Papa Gino's Pizza (hereafter

16   Gino's) in a shopping center in Tracy when defendant entered.
     Defendant asked Pereira about their pizzas and left.  Defendant, an

17   African-American, was wearing a long, tan jacket with distinctive
     buttons on the side and a fuzzy collar; his shoes were tan and teal

18   and looked like a cross between tennis shoes and hiking boots.

19   About 15 minutes later, defendant returned to Gino's and asked
     Fowler for change.  Fowler looked to Pereira, who was in the

20   office area, and then back to defendant; she noticed defendant had
     his hand on a gun in his pocket.  Although defendant did not

21   withdraw the gun, Fowler could see the top of the gun and tell it
     was a metallic brown revolver.  She opened the cash register and

22   defendant grabbed money from the register and fled.  Pereira
     looked up and saw defendant taking money from the cash register.

23   By the time Pereira came out of the office, defendant had left the
     store.

24

25   [2]  The following summary is drawn from the December 15, 2000, opinion by the
     California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 2-6,

26   filed as Exhibit D to Respondent's Answer.

3

Fowler identified someone other than defendant from a photographic lineup; however, she identified defendant in court as the robber. Pereira both picked defendant from a photographic lineup and identified him in court.

On November 30, 1997, at about 1:28 a.m., Marie Wilson, a communications operator for the Tracy Police Department, received a 911 call from a Shell station in Tracy. Initially, Wilson heard only a radio playing but then heard a gurgling sound. The gurgling ceased and there was no sound except the radio. Wilson dispatched officers Todd Adams and Bernie Cummins to the Shell station.

Adams and Cummins entered the Shell station about 1:30 a.m. and found Timothy Mason dead behind the counter; Mason was still holding the telephone. The cause of death was a single gunshot wound to the chest. The fatal bullet was a "nominal, .38-caliber copper jacketed bullet." Examination of the bullet showed it likely was fired from a revolver, a firearm that retains the bullet casing until it is manually removed.

Detective Scott Martin obtained the Shell station's security videotape for the night in question. The videotape, which is made up of shots from different cameras showing both the interior and exterior of the Shell station, shows a person, later identified as Juan Luna, at the Shell station between 1:13:25 and 1:14:16. Luna is not shown on the tape after 1:14:16. At 1:21:03, a man wearing a coat and hat enters. At 1:21:20, the man is standing near a rack containing corn nuts. Mason is then shown ringing up a sale for the man, and then the man is seen reaching across the counter. At 1:21:53, the top portion of the register had been moved to the customer's side of the counter. Immediately thereafter, Mason is shown "clutching his chest" and reaching for the phone.

A still photograph showing the last man to enter the Shell station was published in the local newspaper. Wendy Simmons, who had previously dated defendant but stopped seeing him shortly before Thanksgiving 1997, saw the photograph and recognized that the man depicted was defendant. Simmons recognized the coat defendant was wearing in the photograph because he "wore it all the time." While they were dating, defendant showed Simmons a brown-handled revolver, then replaced it in his attic.

Simmons informed Detective Martin that defendant was the person in the photograph. Defendant's home was then searched and a pair of tan and teal shoes was found. Between defendant's mattresses were two bundles of cash – one containing $126 and the other $165.

In a garbage can on defendant's back porch, the officers found a spent .38 caliber shell casing. Criminalist Michael Giusto

4

compared the .38 caliber bullet that killed Mason with the .38 caliber shell casing found in defendant's garbage can.  Although Giusto could not conclude that the bullet that killed Mason came from the casing found in defendant's garbage, he found it likely that both had come from an uncommon lot of bullets, "the L38-S11 load," produced by Remington.

Greg Grimaldo, who was 14 years old in November 1997, and Juan Luna, who was in his early 30's, each testified that on the evening of the shooting they were passengers in a car on their way to a party at a Motel 6.  They saw defendant, whom they did not know but recognized from the projects, walking along the roadside and gave him a ride home.  Each claimed not to be able to recall the events of the evening or having made various statements when interviewed by Detective Martin.  Grimaldo admitted being afraid to testify, but claimed he did not know why he was afraid and that no one had threatened him.  Detective Martin testified that while he was escorting Grimaldo to the courtroom, Grimaldo told him he was afraid to testify because he thought defendant would have him killed.

Detective Martin also testified that in the course of investigating Mason's homicide, he interviewed both Grimaldo and Luna.  Grimaldo told Martin that after they picked up defendant the latter wanted to stop at the Shell station to buy corn nuts, and they dropped him off.  They drove to the Motel 6 and then returned and picked up defendant.  Defendant was laughing and eating corn nuts and said he had shot the clerk while trying to rob him, but hadn't gotten any money.

Luna told Martin that they picked up defendant at his home about 1:00 a.m. and drove to the "area of Motel 6."  Defendant said he wanted some change and for them to drop him off at the Shell station.  They did so and, after driving around the Motel 6 parking lot, returned to the Shell station and picked him up.  Defendant was calm and got into the front passenger seat.  Luna was in the back seat and could hear defendant opening the cylinder of a gun and what sounded like cocking a gun, but he did not actually see a gun.  Luna said that a few days after the shooting he went to defendant's home and confronted him, telling defendant that it was wrong to have gotten a 13-year-old boy (Grimaldo) involved in a robbery and shooting.  Defendant replied that the clerk had tried to grab his gun and closed the cash drawer on him.

Defendant presented no evidence.

/////

/////

/////

5

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)). See also Lisenba v. California, 314 U.S. 219, 236 (1941); Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999). In order to raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962). See also Henry, 197 F.3d at 1031; Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968). Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) as amended by the AEDPA, sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

1          (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as
2    determined by the Supreme Court of the United States; or

3          (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the
4    State court proceeding.

5    28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

6    Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

7    II.  Improper Admission of Evidence[3]

8          Petitioner claims that he was denied his due process right to a fair trial when the

9    trial court admitted evidence that prosecution witness Grimaldo was afraid that petitioner might

10    harm him if he testified against petitioner at trial.  (Am. Pet. at 5.)  The California Court of

11    Appeal fairly explained the background to this claim as follows:

12          During Grimaldo's testimony he repeatedly stated that he could not recall the events of the evening of the killing or of having made
13    several statements to Detective Martin, which led to the following exchange: "Q. [Prosecutor].  Can I ask you a question, Mr.
14    Grimaldo?  Are you afraid to testify in here? [¶] A. Yeah. [¶] Q. Why are you afraid? [¶] A. I don't know.  I just feel afraid. [¶] Q.
15    Anyone threatened you? [¶] A. (Shakes head back and forth.) [¶] You have to answer out loud. [¶] A. No. [¶] Q. Are you afraid for
16    your safety? [¶] A. Yeah."

17          When Grimaldo continued to claim a lack of recall, the prosecutor asked him: "Q. Are you nervous now? [¶] A. (Nods head up and
18    down.) [¶] Q. I don't make you nervous, do I? [¶] A. No. [¶] Q. Oh, good.  Are you afraid if you tell the truth in this court that
19    you'll be hurt? [¶] A. No.  Huh-uh.  If I know the truth, I would tell the truth, but I don't know.

20          Following cross-examination of Grimaldo, the prosecutor sought
21    the court's permission to impeach Grimaldo by Detective Martin's testimony that when Martin escorted Grimaldo to the courtroom
22    Grimaldo said that he was afraid to testify because he thought defendant was going to have him killed.  Defendant objected,
23    claiming that the evidence would be improper because (1) Grimaldo was never asked whether he was afraid to testify out of
24    fear defendant would kill him; (2) the evidence constituted "trial by

25

26    [3]  For purposes of clarity, the court will discuss petitioner's claims out of the order in which they were presented in the amended petition.

ambush" because the evidence was known to Detective Martin prior to Grimaldo's testifying and it was not disclosed to the defense; and (3) the evidence was more prejudicial than probative. The court overruled the objection and Detective Martin testified in conformity with the offer of proof.

* * *

Additionally, the trial court expressly instructed the jury that the evidence was to be used to evaluate Grimaldo's state of mind only, not to show that defendant was the cause of Grimaldo's fear. The court instructed the jury: "Ladies and gentlemen, this evidence is being admitted only to show the state of mind of the witness, Mr. Grimaldo. It's not being offered to prove that there's any truth behind his belief, but it's offered to show only that it's what he believes and only offered to – because he stated something about his state of mind, Mr. Grimaldo did. Mr. Grimaldo stated something about his state of mind when he was on the witness stand. But it's not to be used for any other purpose."

* * *

At the conclusion of Grimaldo's testimony he was not unconditionally excused from giving further testimony. Instead, he was excused "subject to recall" by either party.

(Opinion at 6-10.)

Petitioner argues that the admission of Detective Martin's testimony, related above, violated his right to a fair trial. He contends that the detective's statements were extremely prejudicial because they implied that petitioner was willing to kill and had "consciousness of guilt." (Am. Pet. at 9.) Petitioner also complains that Detective Martin's testimony was hearsay evidence from "the voice of authority" and that defense counsel was unable to question Grimaldo himself "to show that petitioner had done nothing to instill such fear in Grimaldo." (Id. at 9-10.) Petitioner contends that the prosecutor unfairly ambushed defense counsel with this evidence. (Id.) He also argues that the case against him was relatively weak, as evidenced by Sara Fowler's inability to pick him out of a lineup and Grimaldo's failure to remember what he had previously told Detective Martin about the night of the crime. Petitioner maintains that "the unproven characterization of petitioner as a killer maximized the prejudice flowing from the irrelevant evidence." (Id. at 10.)

8

1          The California Court of Appeal rejected petitioner's arguments in this regard for

2   several reasons.  First, the appellate court concluded that Detective Martin's testimony was

3   relevant to assess Grimaldo's testimony because "a witness's fear of testifying is relevant to his

4   or her credibility."  (Id. at 7.)  Similarly, the court concluded that a witness's fear of retaliation,

5   regardless of the source of the fear, was also relevant and admissible to assess credibility.  (Id. at

6   8.)  The appellate court also found that Detective Martin's testimony was relevant to explain "the

7   inconsistency in Grimaldo's having testified he was both afraid and not afraid to testify, but also

8   the inconsistency between Grimaldo's purported lack of recall and Detective Martin's testimony

9   relating what Grimaldo had told him when interviewed."  (Id. at 8-9.)  The court found that any

10  prejudicial effect of Detective Martin's testimony was significantly lessened by the absence of

11  any evidence whatsoever that petitioner or anyone else had threatened Grimaldo and by the

12  cautionary jury instruction given by the trial judge and related above.  Finally, the state appellate

13  court concluded that petitioner was not prejudiced by the prosecutor's failure to alert defense

14  counsel to Detective Martin's testimony prior to Grimaldo's testimony.  The court stated, "since

15  Grimaldo was subject to recall and [petitioner] never sought to recall him, [petitioner] is in a

16  poor position to complain of a lack of opportunity to question Grimaldo regarding the basis for

17  his fear."  (Id. at 10.)

18          Federal courts may not interfere with a state evidentiary ruling, even an erroneous

19  one, unless the resulting admission of evidence "so fatally infected the proceedings as to render

20  them fundamentally unfair."  Jammal v. Van De Kamp, 926 F.2d 918, 919 (9th Cir. 1991);

21  Butcher v. Marquez, 758 F.2d 373, 378 (9th Cir. 1985).  "A writ of habeas corpus will be granted

22  for an erroneous admission of evidence only where the "testimony is almost entirely unreliable

23  and ... the factfinder and the adversary system will not be competent to uncover, recognize, and

24  take due account of its shortcomings."  Mancuso v. Olivarez, 292 F.3d 939, 956 (9th Cir. 2002)

25  (quoting Barefoot v. Estelle, 463 U.S. 880, 899 (1983)).

26  /////

1          For the reasons described by the California Court of Appeal, the introduction of

2    Detective Martin's statements did not render petitioner's trial fundamentally unfair.  Evidence of

3    Grimaldo's statements to Detective Martin were clearly relevant to explain Grimaldo's "obvious

4    evasiveness" on the witness stand.  (Opinion at 9.)  Any prejudice to petitioner was reduced by

5    the fact that there was no evidence that petitioner had, in fact, threatened Grimaldo and by the

6    trial court's instruction to the jury, given immediately after Detective Martin's testimony, that it

7    could consider the evidence only for the purpose of evaluating Grimaldo's state of mind.[4]

8    Further, petitioner has failed to substantiate his argument that he was unable to question

9    Grimaldo directly about his fear of testifying.  As noted by the state appellate court, at the

10   conclusion of his testimony Grimaldo was excused subject to recall by either party.  Petitioner

11   was not prevented from confronting and cross-examining this witness; he simply chose not to.

12          Finally, contrary to petitioner's arguments, the evidence against him was

13   overwhelming.  As the state appellate court noted, petitioner was "virtually videotaped

14   committing the murder of Mason" and he was identified in court as the person who committed

15   the robbery at Gino's restaurant.  (Id. at 13, 17.)  Under these circumstances, evidence that the

16   fifteen-year-old Grimaldo was afraid of testifying against petitioner could not have had "a

17   substantial and injurious effect or influence in determining the jury's verdict."  Brecht v.

18   Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776

19   (1946)).  The decision of the state courts rejecting petitioner's due process claim is not contrary

20   to or an unreasonable application of federal law.  Accordingly, petitioner is not entitled to relief

21   on this claim.

22   /////

23   /////

24   _____

25          [4] Of course, juries are presumed to follow limiting instructions with respect to the
     purposes for which evidence is admitted. See Aguilar v. Alexander, 125 F.3d 815, 820 (9th Cir.
     1997); see also Richardson v. Marsh, 481 U.S. 200, 211 (1987) ("[J]uries are presumed to follow

26   their instructions....")

1  III. Restrictions on Cross-Examination

2        Petitioner next claims that the trial court violated his right to due process and to

3  confront the witnesses against him when it restricted the cross-examination of prosecution

4  witness Juan Luna (Luna).  Petitioner contends that the trial court's actions precluded him from

5  demonstrating that Luna had a motive to fabricate evidence against petitioner.

6        The record reflects that Luna originally told Detective Martin that he did not know

7  petitioner and had not been at the Shell station on the night of the murder.  (RT at 548-49.)  After

8  being advised that there was a videotape from the Shell station which "would show him if he was

9  there," Luna admitted that he knew petitioner and described his involvement in the events

10 leading up to the murder.  (Id. at 549-52.)  At trial, Luna testified as a prosecution witness.  (Id. at

11 493-507.)  On cross-examination, petitioner's counsel asked Luna whether he had ever been

12 prosecuted for the robbery at the Shell station.  (Id. at 510.)  Luna answered "no;" however, his

13 answer was stricken by the trial court following a relevance objection by the prosecutor.  (Id. at

14 510-11.)  Petitioner argues that the trial court's blocking of this line of questioning prevented him

15 from conducting cross-examination designed to demonstrate that Luna was fabricating his story

16 in order to avoid being prosecuted for his involvement in the crime.

17       The California Court of Appeal agreed that the trial court erred in precluding the

18 defense from asking Luna about the fact that he was not prosecuted in connection with the

19 murder of Timothy Mason.  The appellate court noted that the question asked by defense counsel

20 "was foundational, going to a possible motive Luna may have had for giving Detective Martin

21 statements implicating defendant."  (Opinion at 12.)  However, the appellate court concluded that

22 the error was harmless beyond a reasonable doubt, reasoning as follows:

23             Not only did the videotape show that defendant was the last person
              in the store portion of the Shell station moments before Mason was
24            shot, but earlier that evening defendant had used a "brownish
              color[ed]" revolver to rob Sarah Fowler at Gino's.  Defendant was
25            wearing the same distinctive coat in the Shell station videotape that
              he wore during the robbery of Fowler.  Wendy Simmons not only
26            recognized the coat since defendant "wore it all the time," but she

1  testified that defendant showed her a revolver with a brown handle.
   The bullet that killed Mason was uncommon and, according to the
2  criminalist, both the bullet removed from Mason's body and the
   casing found in defendant's garbage can "most likely" came from
3  the L38-S11 Remington load.  This evidence is simply
   overwhelming.  Consequently, any error by the court in excluding
4  defendant's query to Luna was harmless beyond a reasonable
   doubt.

5

6  (Id. at 12-13.)

7          The right to confront witnesses, guaranteed by the Sixth and Fourteenth

8  Amendments, includes the right to cross-examine witnesses to attack their general credibility or

9  show their possible bias or self-interest in testifying.  Olden v. Kentucky, 488 U.S. 227, 231

10 (1988); Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986); Davis v. Alaska, 415 U.S. 308,

11 316 (1973).  Nonetheless, the improper denial of a defendant's opportunity to impeach a witness

12 for bias is subject to a harmless-error analysis.  Van Arsdall, 475 U.S. at 673; Bockting v. Bayer,

13 399 F.3d 1010, 1020 (9th Cir. 2005) ("Confrontation Clause violations are subject to harmless

14 error analysis and thus may be excused depending on the state of the evidence at trial").  Thus,

15 petitioner is not entitled to relief unless he can establish that the trial court's error "had

16 substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S.

17 at 637.  See also Forn v. Hornung 343 F.3d 990, 999 (9th Cir. 2003) (finding that a

18 Confrontation Clause error did not have a "substantial and injurious" effect on the verdict and

19 that the error was therefore harmless).

20          For the same reasons identified by the California Court of Appeal, this court also

21 concludes that the trial court's error in limiting the cross-examination of Luna for the purpose of

22 establishing that he had a motive to lie was harmless.  As noted above, the case against petitioner

23 was overwhelming.  In light of the other evidence introduced at trial, petitioner would have been

24 convicted even if Luna "had never set foot in the courtroom."  United States v. James, 139 F.3d

25 709, 714 (9th Cir. 1998) (finding Confrontation Clause error harmless beyond a reasonable

26 doubt, given the overwhelming nature of the evidence against defendant).  Further, as noted by

respondent, Luna's testimony was not particularly harmful to petitioner or crucial to the case against him. Luna testified at trial that he could not recall many of the events that occurred on the night of the shooting and he could not remember much of what he told Detective Martin. (RT at 497-503.) Under these circumstances, an unfettered attack on Luna's credibility was not critical to the defense.[5]

The decision of the California Court of Appeal rejecting petitioner's argument that he was denied his rights under the Confrontation Clause is not contrary to or an unreasonable application of federal law. Accordingly, petitioner is not entitled to relief.

IV. Jury Instruction Error

Petitioner claims that the jury instruction defining "reasonable doubt" given at his trial, along with the prosecutor's rebuttal argument, violated his Fourteenth Amendment right to due process by lessening the prosecution's burden of proof. The court will evaluate these claims in turn below.

A. CALJIC No. 2.90

The jury in this case was instructed with the current version of CALJIC No. 2.90, which provides, in relevant part, as follows:

> Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.

(RT at 596.)   Prior to its modification in 1994, this instruction stated in relevant part:

/////

---

[5] In any event, defense counsel was able to argue to the jury that to the extent he inculpated petitioner Luna's testimony lacked credibility in that: (1) he was an accomplice whose testimony, according to jury instruction, should be distrusted absent corroboration; (2) he was a convicted felon; and (3) his testimony was at best inconsistent and at worst materially false. (RT at 655-57.)

> Reasonable doubt is defined as follows:  It is not a mere possible doubt; because everything relating to human affairs, **and depending on moral evidence**, is open to some possible or imaginary doubt.  It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, **to a moral certainty**, of the truth of the charge.

(Emphasis added).

In <u>Victor v. Nebraska</u>, 511 U.S. 1 (1994), the United States Supreme Court upheld the constitutionality of this pre-1994 instruction, but criticized the use of the terms "moral evidence" and "moral certainty."  (<u>Id.</u> at 10-14.)  Subsequent to the decision in <u>Victor</u>, the California Supreme Court suggested that the instruction should be revised to delete the terms "moral evidence" and "moral certainty" in order to prevent future convictions from being reversed on the basis of the instruction.  In this regard, the California Supreme Court stated:

> "A slight modification in view of (the <u>Victor</u>) decision might be deemed safe, indeed safer than not making it.  The high court made clear that the terms "moral evidence" and "moral certainty" add nothing to the jury's understanding of reasonable doubt.  It thus seems that trial courts might, in the future, safely delete the following phrases in the standard instruction:  "and depending on moral evidence," and "to a moral certainty."

<u>People v. Freeman</u>, 8 Cal. 4th 450, 504 (1994).  CALJIC No. 2.90 was subsequently revised accordingly, and it is the revised instruction that was given to petitioner's jury.

Petitioner's argument that CALJIC No. 2.90 lessens the prosecution's burden of proof in violation of the Due Process Clause has been explicitly rejected by the Ninth Circuit Court of Appeals.  <u>See</u> <u>Lisenbee v. Henry</u>, 166 F.3d 997, 999 (9th Cir. 1999).  Moreover, in state criminal trials, the Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  <u>In re Winship</u>, 397 U.S. 358, 364 (1970).  "[T]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.  Rather, 'taken as a whole, the instructions [must] correctly

14

1    conve[y] the concept of reasonable doubt to the jury.'" Victor, 511 U.S. at 5  (quoting Holland v.

2    United States, 348 U.S. 121, 140 (1954) (internal citation omitted)).  In evaluating the

3    constitutionality of a jury charge such as this one, a court must determine "whether there is a

4    reasonable likelihood that the jury understood the instructions to allow conviction based on proof

5    insufficient to meet the Winship standard." Victor, 511 U.S. at 6.  See also Ramirez v. Hatcher,

6    136 F.3d 1209, 1211 (9th Cir. 1998).

7            Petitioner has failed to demonstrate a reasonable likelihood that the jury

8    understood the reasonable doubt instruction given at his trial either to suggest a standard of proof

9    lower than due process requires or to allow conviction on factors other than the prosecution's

10   proof.  Reviewing the instructions in their entirety, this court finds no reasonable likelihood that

11   the jury misunderstood the government's burden of proving guilt beyond a reasonable doubt.  In

12   addition to being given CALJIC 2.90, petitioner's jurors were instructed that they "must

13   determine what facts have been proved from the evidence received in the trial and not from any

14   other source." (CT at 155)  The jury was also instructed that they could not find petitioner guilty

15   based on circumstantial evidence "unless the proved circumstances are not only (1) consistent

16   with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any

17   other rational conclusion." (Id. at 162.)  Finally, the jury was told that the prosecution had the

18   burden "of proving [petitioner] guilty beyond a reasonable doubt." (Id. at 179).  These

19   instructions, along with CALJIC 2.90, adequately informed the jury of the prosecution's burden

20   to prove the case against petitioner beyond a reasonable doubt based on an analysis of the totality

21   of the evidence introduced at trial.  The Supreme Court has held that "[a]n instruction cast in

22   terms of an abiding conviction as to guilt, without reference to moral certainty, correctly states

23   the government's burden of proof." Victor, 511 U.S. at 14.

24           This court concludes that the modified CALJIC 2.90 was a reasonable response to

25   the Supreme Court's decision in Victor.  Further, taken as a whole, the instructions correctly

26   conveyed the concept of reasonable doubt to the jury.  Lisenbee, 166 F.3d at 999; Ramirez, 136

1  F.3d at 1214.  Petitioner has failed to demonstrate that the state court's decision rejecting his

2  challenge to the constitutionality of this jury instruction was contrary to, or involved an

3  unreasonable application of federal law.  Accordingly, relief as to this claim should be denied.

4          B.  Prosecutor's Remarks

5          Petitioner also claims that the prosecution's burden of proof was lessened by the

6  following remarks made during the prosecutor's rebuttal argument:

7          First of all, [defense counsel] told you reasonable doubt, you
        should feel the truth, abiding conviction of truth of the charge, and
8          that's true.  That's what you are instructed about.  But you are not
        going to be instructed you should feel that way in 10 years or 20
9          years or forever.  As a matter of fact, I'd suggest that you not even
        think about 10 and 30 years in the future, you think about the facts
10         before you today and you make your decision based on the
        evidence that you have today and you take whatever memories you
11         want of this trial back with you or forget them as you choose.

12  (RT at 661.)  This remark by the prosecutor appeared to be a response to the following comment

13  by defense counsel during his closing argument:

14         The district attorney has the burden in this case to prove to you
        beyond a reasonable doubt that Mr. Jones committed these crimes.
15         The definition is in the instruction, go over it, it talks about an
        abiding conviction.
16
        So, after you decide this case, if you can look back in a month, or a
17         year, or whatever, 10 years from now and say, "Hey, I feel good
        about my decision I made, I have an abiding conviction to that
18         decision," well you know you have done your job.

19  (Id. at 647-48.)

20          Petitioner contends that the prosecutor's comments lessened the prosecution's

21  burden of proof because they instructed the jury that "their 'abiding conviction' could be so

22  fleeting as to last no more than a day."  (Am. Pet. at 12.)  Petitioner argues, "the prosecutor took

23  an instruction that was already short of instructing jurors that they needed to be persuaded to a

24  near certainty and turned it into something close to off-hand."  (Id.)

25  /////

26  /////

The California Court of Appeal rejected this argument, stating as follows:

> Not only did defendant fail to object to the prosecutor's argument, thereby waiving the issue for appeal,[6] but the argument was an appropriate rebuttal.  The prosecutor's argument was a response to defendant's attempt to read into the reasonable doubt instruction a nonexistent quantification of the meaning of "abiding conviction." Consequently, we reject defendant's claim.

(Opinion at 15.)  Respondent argues that this ruling by the state appellate court constitutes a state procedural bar precluding this court from addressing the merits of petitioner's claim.  (Answer at 28.)  Thus, respondent has met his burden of adequately pleading an independent and adequate state procedural ground as an affirmative defense.  See Bennett v. Mueller  322 F.3d 573, 586 (9th Cir. 2003).

Petitioner does not deny that his trial counsel did not raise a contemporaneous objection to the prosecutor's statements during rebuttal argument.   Although the state appellate court addressed petitioner's claim of prosecutorial misconduct on the merits, it also expressly held that the issue was waived on appeal because of defense counsel's failure to object. Petitioner has failed to meet his burden of asserting specific factual allegations that demonstrate the inadequacy of California's contemporaneous-objection rule as unclear, inconsistently applied or not well-established, either as a general rule or as applied to him.  Bennett  322 F.3d at 586; Melendez v. Pliler, 288 F.3d 1120, 1124-26 (9th Cir. 2002).  Petitioner's claim is therefore procedurally barred.  See Coleman v. Thompson, 501 U.S. 722, 747 (1991); Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (claim that defendant's due process rights were violated by the trial court's failure to instruct sua sponte on the definition of "major participant" was procedurally barred because counsel failed to make a contemporaneous objection to the instruction at trial).  Petitioner has also failed to demonstrate that there was cause for his procedural default or that a miscarriage of justice would result absent

---

[6]  People v. Ochoa (1998) 19 Cal. 4th 353, 430-31.

1  review of the claim by this court.  See Coleman, 501 U.S. at 748; Vansickel v. White, 166 F.3d

2  953, 957-58 (9th Cir. 1999).  The court is therefore precluded from considering the merits of this

3  claim.

4          Even were this claim not procedurally barred, it lacks merit.  A defendant's due

5  process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair.

6  Darden v. Wainwright, 477 U.S. 168, 181 (1986).   However, such misconduct does not, per se,

7  violate a petitioner's constitutional rights.  Jeffries v. Blodgett, 5 F.3d 1180, 1191 (9th Cir. 1993)

8  (citing Darden, 477 U.S. at 181, and Campbell v. Kincheloe, 829 F.2d 1453, 1457 (9th Cir.

9  1987)).  Claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire

10 proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness

11 as to make the resulting conviction a denial of due process.'"  Johnson v. Sublett, 63 F.3d 926,

12 929 (9th Cir. 1995) (citation omitted).  See also Greer v. Miller, 483 U.S. 756, 765 (1987);

13 Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Turner v Calderon, 281 F.3d 851, 868 (9th

14 Cir. 2002).  Relief on such claims is limited to cases in which the petitioner can establish that

15 prosecutorial misconduct resulted in actual prejudice.  Johnson, 63 F.3d at 930 (citing Brecht v.

16 Abrahamson, 507 U.S. 619, 637-38 (1993)); see also Darden, 477 U.S. at 181-83; Turner, 281

17 F.3d at 868.  Put another way, prosecutorial misconduct violates due process when it has a

18 substantial and injurious effect or influence in determining the jury's verdict.  See Ortiz-

19 Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

20         In considering claims of prosecutorial misconduct involving allegations of

21 improper argument the court is to examine the likely effect of the statements in the context in

22 which they were made and  determine whether the comments so infected the trial with unfairness

23 as to make the resulting conviction a denial of due process.  Turner, 281 F.3d at 868; Sandoval v.

24 Calderon, 241 F.3d 765, 778 (9th Cir. 2001), cert. denied, 534 U.S. 943 (2001); see also

25 Donnelly, 416 U.S. at 643; Darden, 477 U.S. at 181-83.  Thus, in order to determine whether a

26 prosecutor engaged in misconduct during closing argument, it is necessary to examine the entire

18

1   proceedings to place the remarks in context.  See United States v. Robinson, 485 U.S. 25, 33

2   (1988) ("[P]rosecutorial comment must be examined in context. . . ."); Greer v. Miller, 483 U.S.

3   756, 765-66 (1987); Williams v. Borg, 139 F.3d 737, 745 (9th Cir. 1998).

4          Here, the challenged statements made by the prosecutor in his rebuttal argument

5   were an appropriate response to defense counsel's closing argument.  The statements did not

6   suggest that the prosecution had a lesser burden than proof beyond a reasonable doubt, nor did

7   they otherwise render petitioner's trial fundamentally unfair.  See United States v. Young, 470

8   U.S. 1, 12-13 (1985) ("if the prosecutor's remarks were 'invited,' and did no more than respond

9   substantially in order to 'right the scale,' such comments would not warrant reversing a

10  conviction").  Moreover, the jury instructions squarely placed the burden on the prosecution to

11  prove each and every element beyond a reasonable doubt and the prosecutor's remarks did not

12  contradict those instructions in any significant way.  Accordingly, even if this claim were not

13  procedurally barred, petitioner would not be entitled to relief.

14  V.  Cumulative Error

15          Petitioner also claims that the cumulative effect of the errors alleged in the claims

16  addressed above, requires reversal of his conviction.  This argument was rejected by the

17  California Court of Appeal on petitioner's direct appeal and by the California Supreme Court on

18  petition for review.  (See Answer, Exs. D, F.)

19          Where the cumulative effect of errors is so prejudicial that defendant is denied a

20  fair trial, habeas relief may be warranted.  See United States v. Necoechea, 986 F.2d 1273, 1282-

21  83 (9th Cir. 1993).  Petitioner has not established a denial of due process in the aggregate of his

22  claims.  Accordingly, he is not entitled to relief with respect to his cumulative error claim.

23  VI.  Ineffective Assistance of Counsel

24          Petitioner alleges that his trial counsel rendered ineffective assistance as

25  evidenced by numerous alleged errors of counsel.  After setting forth the applicable legal

26  principles, the court will analyze these claims in turn below.

19

1          A. <u>Legal Standards</u>

2          The Sixth Amendment guarantees the effective assistance of counsel.  The United

3 States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

4 <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

5 counsel, a petitioner must first show that, considering all the circumstances, counsel's

6 performance fell below an objective standard of reasonableness.  See <u>Strickland</u>, 466 U.S. at

7 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the

8 result of reasonable professional judgment, the court must determine whether, in light of all the

9 circumstances, the identified acts or omissions were outside the wide range of professionally

10 competent assistance.  <u>Id.</u> at 690; <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003).  Second, a

11 petitioner must establish that he was prejudiced by counsel's deficient performance.  <u>Strickland</u>,

12 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

13 counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at

14 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

15 outcome."  <u>Id.</u>  <u>See also</u> <u>Williams</u>, 529 U.S. at 391-92; <u>Laboa v. Calderon</u>, 224 F.3d 972, 981

16 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

17 deficient before examining the prejudice suffered by the defendant as a result of the alleged

18 deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

19 sufficient prejudice . . . that course should be followed."  <u>Pizzuto v. Arave</u>, 280 F.3d 949, 955

20 (9th Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. at 697).

21          In assessing an ineffective assistance of counsel claim "[t]here is a strong

22 presumption that counsel's performance falls within the 'wide range of professional assistance.'"

23 <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986) (quoting <u>Strickland</u>, 466 U.S. at 689).  There

24 is in addition a strong presumption that counsel "exercised acceptable professional judgment in

25 all significant decisions made."  <u>Hughes v. Borg</u>, 898 F.2d 695, 702 (9th Cir. 1990) (citing

26 <u>Strickland</u>, 466 U.S. at 689).  However, that deference "is predicated on counsel's performance

1   of sufficient investigation and preparation to make reasonably informed, reasonably sound

2   judgments." Mayfield v. Woodford, 270 F.3d 915, 927 (9th Cir. 2001) (en banc)).

3        B. Petitioner's Claims

4        Petitioner claims that his trial counsel rendered ineffective assistance by failing to:

5   (1) call a mental health expert, a firearms expert, and an identification expert as witnesses for the

6   defense; (2) investigate and present witnesses in support of an alibi defense; and (3) file a motion

7   to suppress evidence.  (Am. Pet. at 5.)  Petitioner also appears to allege, as a more general claim,

8   that his trial counsel rendered ineffective assistance because he presented no evidence but chose

9   instead to merely attack the credibility of the prosecution witnesses and rely on the state of the

10  prosecution's evidence.  (Id.)

11       Petitioner raised these claims for the first time in a petition for a writ of habeas

12  corpus filed in the San Joaquin Superior Court, which denied them for the following stated

13  reasons:

14            Petitioner contends that he received ineffective assistance of
          counsel at his trial.  Specifically, petitioner contends that counsel
15            failed to "utilize the statutory procedure of penal code section
          1538.5" to exclude security tapes.  Section 1538.5 has no
16            application here.  Further, his contention that the tapes did not
          "depict[] petition, or his face proper" is belied by the evidence as
17            recited by the Court of Appeal.

18            Petitioner's next claim is that counsel failed to call an "expert on
          security tapes, and/or still photos from security tapes" as a witness
19            on his behalf.  He has failed to set forth any evidence regarding
          how such an expert could have benefitted his case.  He also claims
20            that counsel should have produced an "expert on 'eye witness
          identification,' a fingerprint expert and a firearms expert.  Once
21            again, plaintiff (sic) has made only conclusory allegations and has
          set forth no facts demonstrating either misconduct or prejudice.
22            His claim that counsel was constitutionally ineffective in failing to
          put on a defense is also unsupported by any facts.

23

24            Petitioner has failed to demonstrate either ineffective assistance or
          prejudice as a result of counsel's decisions.  (In re Bower (1985) 38
          Cal.3d 865; 215 Cal.Rptr. 267, 700 P.2d 1269; People v. Jackson
25            (1980) 28 Cal.3d 264; 168 Cal.Rptr. 603, 618 P.2d 149.  Strickland
          v. Washington (1984) 466 U.S. 668.)  Further, it appears that the
26            decisions complained of constitute trial tactics, which are not

1    reviewable on habeas corpus.  (People v. Esquibel (1975) 44
     Cal.App.3d 591, 595; 118 Cal.Rptr. 748.)
2
     The petition is therefore denied.
3

4    (Answer, Ex. I.)

5          Petitioner subsequently raised the same claims in a petition for writ of habeas

6    corpus filed in the California Supreme Court.  (Answer, Ex. J.)  As described above, the Supreme

7    Court denied the claims with citation to In re Swain, 34 Cal. 2d 300 (1949) and In re Duvall, 9

8    Cal. 4th 464, 474 (1995).  (Answer, Ex. K.)  Respondent does not argue that these claims are

9    subject to a state procedural bar by virtue of the decision of the California Supreme Court.

10   Accordingly, the decision of the San Joaquin Superior Court, which is the only "reasoned" state

11   court decision, provides the basis for the state court judgment.  Avila v. Galaza, 297 F.3d 911,

12   918 (9th Cir. 2002) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)).

13          1.  Failure to Call Mental Health Expert as a Witness at Trial

14          Petitioner claims that his trial counsel rendered ineffective assistance when he

15   failed to call a mental health expert as a witness at trial.  Petitioner states his trial counsel was

16   aware that petitioner had a history of "mental health issues dating back to 1973" and that this

17   knowledge would have prompted a reasonably competent attorney to investigate a mental health

18   defense.  (Denial and Exception to the Return (Return) at 4; Traverse at 7.)  Petitioner has filed

19   medical records with this court which indicate that he has a history of paranoid schizophrenia and

20   drug use and that he has been prescribed medication to treat his condition in the past.  (Return,

21   Ex. A; Traverse, Ex. A.)  Petitioner has also filed the declaration of his trial counsel, in which

22   counsel declares that he discussed with petitioner the possibility of presenting a mental health

23   defense but that petitioner "refused such a defense because he insisted that he was innocent and

24   denied suffering from a mental defect."  (Traverse, Ex. B.)

25          Petitioner has failed to demonstrate that his trial counsel's conduct fell outside the

26   wide range of professionally competent assistance when he elected not to pursue a defense based

on petitioner's mental state.  Counsel apparently considered such a defense but rejected it when petitioner refused to cooperate.  Indeed, there is no evidence, and petitioner does not argue, that his mental health problems precluded him from forming the necessary intent at the time the crimes were committed.  Instead, counsel chose to present the conflicting defense that petitioner did not commit the crime at all.  This tactical decision was reasonable under the circumstances and may not be successfully challenged in this federal habeas petition.  Strickland, 466 U.S. at 691 ("[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions"); Bean v. Calderon, 163 F.3d 1073, 1082 (9th Cir. 1998) (once counsel reasonably chooses to present a particular defense, his duty to investigate a directly conflicting defense is "at an end"); Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir. 1984) (a tactical decision by counsel with which the defendant later disagrees is not a basis for a claim of ineffective assistance of counsel); United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981) (same).  The decision of the San Joaquin Superior Court rejecting this claim is not contrary to or an unreasonable application of Strickland.

## 2.  Failure to Call a Firearms Expert as a Witness at Trial

Petitioner's also argues that his trial counsel rendered ineffective assistance when he failed to call a firearms expert as a witness for the defense.  (Am. Pet. at 5.)  Petitioner does not explain what a firearms expert would have testified to or how such testimony would have benefitted his defense.  Petitioner's allegations in this regard are vague and conclusory, and relief should be denied on that basis.  See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("presentation of conclusory allegations unsupported by specifics is subject to summary dismissal"); Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).

Even assuming arguendo that defense counsel's failure to obtain a firearms expert was outside "the wide range of professionally competent assistance" that the Sixth Amendment

1    requires, petitioner has failed to demonstrate prejudice.  At most, petitioner appears to be arguing

2    that an interview with a firearms expert may possibly have turned up helpful evidence.  Any such

3    contention is insufficient to establish prejudice.  See Dows v. Wood, 211 F.3d 480, 486 (9th Cir.

4    2000) (to establish that counsel was ineffective for failing to produce a witness at trial, a habeas

5    petitioner must provide "evidence that this witness would have provided helpful testimony for

6    the defense," such as an affidavit from the alleged witness); Villafuerte v. Stewart, 111 F.3d 616,

7    632 (9th Cir. 1997) (petitioner's ineffective assistance claim denied where he presented no

8    evidence concerning what counsel would have found had he investigated further, or what

9    lengthier preparation would have accomplished); United States v. Berry, 814 F.2d 1406, 1409

10   (9th Cir. 1987) (appellant failed to meet prejudice prong of ineffectiveness claim because he

11   offered no indication of what potential witnesses would have testified to or how their testimony

12   might have changed the outcome of the hearing).[7]

13          In addition, ineffective assistance claims based on a duty to investigate must be

14   considered in light of the strength of the government's case."'  Bragg v. Galaza, 242 F.3d 1082,

15   1088 (9th Cir. 2001) (quoting Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986)).

16   Here, as discussed above, the prosecution's case against petitioner was overwhelming.  Not only

17   was petitioner identified by the victims of his crime at Gino's and videotaped at the Shell station,

18   but he owned a revolver that matched the description of the employees at Gino's and was

19   carrying it the night of the murder.  (RT at 352-53, 528-29, 551.)  In light of this evidence, trial

20   counsel's failure to engage a firearms expert was not prejudicial to petitioner's defense.  The

21   decision of the California Superior Court rejecting this claim is also not contrary to or an

22   unreasonable application of Strickland.

23

24          [7] Respondent notes that in state court petitioner claimed that the bullet casing found at
     his residence was from a rifle and not a revolver and that counsel should have obtained a firearms
     expert to testify that the bullet could not have come from his revolver.  (Answer, Ex. G at 38; Ex.
25   J at 38.)  Any such argument lacks a factual basis.  At trial, the testimony demonstrated that the
     bullet casing found at petitioner's residence was likely to have been fired from a revolver.  (RT at
26   336-37.)

1        3.  Failure to Call an Identification Expert as a Witness at Trial

2            Petitioner claims that his trial counsel rendered ineffective assistance by failing to

3   call an "identification expert" as a witness at trial .  (Am. Pet. at 5.)  Once again, petitioner does

4   not explain the nature of any proposed testimony or explain how an identification expert would

5   have helped his case.  For this reason alone, relief should be denied.  Blackledge, 431 U.S. at 74;

6   Jones, 66 F.3d at  204.

7            This claim lacks merit in any event.  Petitioner claimed in his habeas petitions

8   filed in state court that an identification expert could have challenged the accuracy of the

9   eyewitness identifications on the basis of fading memories, exposure to subsequent information,

10  bias, and/or methods of questioning.  (Answer, Ex. G at 58-60; Ex. J at 58-60.)  However,

11  petitioner has provided no evidence, either here or with his state court petition, that these factors

12  influenced the witness identifications that were introduced into evidence at his trial.  Indeed,

13  petitioner was identified to begin with by his former girlfriend, who recognized his picture taken

14  by the Shell station surveillance camera when it appeared in the newspaper.  None of petitioner's

15  arguments in support of this claim are relevant to that identification.  Further, even assuming that

16  defense counsel's failure to call an identification expert constituted substandard performance,

17  petitioner has failed to demonstrate prejudice in light of the overwhelming evidence of his guilt.

18  The state courts reasonably concluded that petitioner had failed to show either ineffective

19  assistance or prejudice with respect to defense counsel's failure to call an identification expert as

20  a witness at petitioner's trial.

21        4.  Failure to Investigate and Present Witnesses in Support of an Alibi Defense

22            Petitioner next argues claims that his trial counsel rendered ineffective assistance

23  because he failed to investigate a possible alibi defense and to present evidence in support

24  thereof.  Petitioner does not explain the nature of his potential alibi, nor does he identify any alibi

25  witnesses.  Petitioner's trial counsel declares that petitioner did not provide him with any

26  evidence to support an alibi defense; therefore, he could not present one.  (Traverse, Ex. B.)  No

25

1  evidence before this court indicates there was any basis for the presentation of an alibi defense.

2  Under these circumstances, petitioner has failed to show that counsel's representation fell below

3  the standard of objective reasonableness or that there is a reasonable probability that the result at

4  trial would have been different had counsel investigated the possibility of an alibi defense.  See

5  Dows, 211 F.3d at 486 (rejecting an ineffective assistance  claim for failure to call alibi witness

6  where there was no evidence in the record that a witness actually existed, other than the

7  petitioner's "self-serving affidavit"); Ames v. Endell, 856 F.2d 1441, 1444 (9th Cir. 1988) (a

8  lawyer's "duty of investigation is determined by the facts he knows").

9              5.  Failure to File a Motion to Suppress Evidence

10             Petitioner claims that his trial counsel rendered ineffective assistance by failing to

11 file a "motion to suppress evidence" on his behalf.  (Am. Pet. at 5.)  In state court, petitioner

12 claimed that his trial counsel should have filed a motion pursuant to California Penal Code §

13 1538.5 to suppress the "security tapes."  (Answer, Ex. I at 1.)  The San Joaquin Superior Court

14 rejected this claim on the ground that:

15             Section 1538.5 has no application here.  Further, [petitioner's]
              contention that the tapes did not "depict[] petitioner, or his face
16            proper" is belied by the evidence as recited by the Court of Appeal.

17 (Id.)

18             Under Strickland, to demonstrate prejudice stemming from a failure to file a

19 motion a defendant must show that: (1) had his counsel filed the motion, it is reasonable that the

20 trial court would have granted it as meritorious, and (2) had the motion been granted, it is

21 reasonable that there would have been an outcome more favorable to him.  Kimmelman, 477

22 U.S. at 373-75.  Here, the state courts found that a motion to suppress the surveillance tapes

23 pursuant to California Penal Code § 1538.5 would have been meritless.[8]  This determination,

24

25       [8]  Obviously, petitioner would not have had any reasonable expectation of privacy in the
   Shell station's surveillance videotapes depicting him.  Those videotapes were obtained by law
26 enforcement from the Shell station.

1   based on state law, may not be set aside in this federal habeas corpus proceeding.  Middleton,

2   768 F.2d at 1085.  Moreover, an attorney's failure to make a meritless objection or motion does

3   not constitute ineffective assistance of counsel.  Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th

4   Cir. 2000) (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)); see also Rupe v. Wood,

5   93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient

6   performance").  Accordingly, the failure of petitioner's trial counsel to file a frivolous motion to

7   suppress evidence was neither ineffective nor prejudicial to petitioner.

8                   6.  Failure to Present an Adequate Defense

9                   Petitioner alleges, as a general matter, that his trial counsel rendered ineffective

10   assistance because he did not call any witnesses or put on any evidence for the defense, but chose

11   instead to merely cross-examine the prosecution witnesses and rely on challenging the

12   prosecution's evidence.  Under the circumstances of this case, where the record does not disclose

13   any basis for an alibi defense or a challenge to the prosecution's physical evidence, and where

14   petitioner did not wish to present a mental health defense, counsel's tactical decision to rely upon

15   a "reasonable doubt" defense was not outside the wide range of professional assistance.  See

16   United States v. Oplinger, 150 F.3d 1061, 1072 (9th Cir. 1998) ("It is unclear to us how much

17   more rigorous a defense could have been put forth on Oplinger's behalf; there were, after all, no

18   documents or witnesses to support Oplinger's version of the events.");  United States v. Hamilton,

19   792 F.2d 837, 839 (9th Cir. 1986) ("Under these facts, all Hamilton's attorney could do was what

20   he did do: cross-examine the government's witnesses.")   Rather, trial counsel's decision to

21   pursue a defense based upon "reasonable doubt" appears to have been dictated by the evidence as

22   well as other circumstances and was a reasonable tactical choice.  See Correll v. Stewart, 137

23   F.3d 1404, 1411 (9th Cir. 1998) (defense counsel's decision not to present a psychiatric defense

24   which would have contradicted the primary defense theory of misidentification was within the

25   broad range of professionally competent assistance).

26   /////

1    Moreover, a review of the record reflects that counsel's performance at trial was

2    competent and thorough.  Petitioner does not challenge counsel's cross-examination techniques

3    and a review of the record does not disclose any reasonable challenge thereto.  The record

4    reflects that counsel discussed with petitioner "quite a bit" whether petitioner should testify, and

5    petitioner decided that he did not wish to do so.  (RT at 572.)  A review of counsel's closing

6    argument reveals a thorough attempt to point out the weaknesses in the prosecution's case.  (Id.

7    at 646-61.)  Petitioner has failed to demonstrate either incompetent performance by counsel or

8    prejudice to himself stemming therefrom.

9                    7.  Failure to File a Motion to Dismiss the Information

10    Finally, petitioner also claims that his trial counsel rendered ineffective assistance

11    because of his failure to file a "motion to dismiss for lack of evidence presented at the

12    preliminary hearing."  (Am. Pet. at 5.)  This claim was not presented to the California Supreme

13    Court and has, therefore, not been exhausted. (Answer, Ex. J.)[9]  Nonetheless, pursuant to 28

14    U.S.C. § 2254(b)(2), this court will recommend that relief be denied as to this claim.  See Cassett

15    v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (a federal court considering a habeas petition may

16    deny an unexhausted claim on the merits when it is perfectly clear that the claim is not

17    "colorable").

18    Petitioner has not presented a copy of the preliminary hearing transcript in support

19    of this claim and it is not part of the record before this court.  Petitioner has also failed to explain

20

21         [9]A federal district court may not entertain a petition for habeas corpus unless the
petitioner has exhausted state court remedies with respect to each claim raised in the petition.
22    Rose v. Lundy, 455 U.S. 509, 516 (1982).  A petitioner satisfies the federal exhaustion
requirement by fairly presenting to the state's highest court all federal claims before he presents
23    them to a federal court.  Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam); Crotts v.
Smith, 73 F.3d 861, 865 (9th Cir. 1996).   The petitioner must alert the state courts that a claim
24    under the United States Constitution is being presented.  Shumway v. Payne, 223 F.3d 982, 987
(9th Cir. 2000) (citing Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999)); see also Duncan,
25    513 U.S. at 365-66 ("If state courts are to be given the opportunity to correct alleged violations of
prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting
26    claims under the United States Constitution.").

in what particulars the evidence at the preliminary hearing was lacking.  Petitioner's vague and conclusory claim in this regard, unsupported by factual allegations or citations to the record, should be rejected.  Blackledge, 431 U.S. at 74; Jones, 66 F.3d at 204.[10]

For all of the reasons set forth above, petitioner is not entitled to relief on any aspect of his ineffective assistance of counsel claim.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 21, 2006.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:jones2276.hc

---

[10]  Even if considered on the merits, this claim lacks merit.  Pursuant to California Penal Code § 995, an information must be dismissed if the evidence presented at the preliminary hearing was insufficient to demonstrate probable cause that the defendant committed the charged offense.  Cal. Penal Code § 995(a)(2).  Probable cause has been defined under California law to mean "such a state of facts as would lead a [person] of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused."  People v. Mower, 28 Cal. 4th 457, 473 (2002) (citations omitted).  "'Reasonable and probable cause' may exist although there may be some room for doubt."  (Id.)  Minute orders contained in the record before this court reflect that Wendy Simmons and Sarah Fowler testified at the preliminary hearing and that the exhibits at the hearing included the videotape from the Shell station.  (CT at 27-28.)  This evidence would have demonstrated probable cause that petitioner was guilty of the charged crimes.  Accordingly, a motion to dismiss brought pursuant to California Penal Code § 995 clearly would have been meritless.